W. Steve **CARLISLE III**, et al.

v.

LTV **ELECTROSYSTEMS, INC.** and Eppler, Guerin & Turner, Inc.

Civ. A. No. 3–3943–A.

United States District Court,
N. D. Texas,
Dallas Division.
Jan. 25, 1972.

Dean Carlton, Dallas, Tex., Edward R. Smith, of Smith & Baker, Lubbock, Tex., for plaintiffs.

William H. Tinsley, Harold Hoffman, Wynne, Jaffe & Tinsley, Dallas, Tex., for LTV Electrosystems.

Jackson, Walker, Winstead, Cantwell & Miller, by D. L. Case, Dallas, Tex., for Eppler, Guerin & Turner.

## PRETRIAL ORDER (DISMISSING CLASS ACTION)

ESTES, Chief Judge.

On the 15th day of January, 1972, came on to be heard in the above-captioned action plaintiffs' Motion to Confirm Class Action and for Court Order Respecting Notices to Class Members, such motion having been filed at the conclusion of discovery for the purpose of determining the propriety of the class action, as directed by the Court; and the Court, having considered the pleadings, the depositions, the answers to interrogatories, and the affidavit of W. P. Robertson with attachments thereto, made the following findings and conclusions with respect to such motion:

This action was originally filed on June 24, 1970, against LTV Electrosystems, Inc., only. The named plaintiffs were W. Steve Carlisle III, Willie Steve Carlisle, Jr., and William M. Higgins. The Carlisles sued individually and as representatives of the class of owners of common stock in Defendant LTV Electrosystems, Inc., which had purchased said stock between December 1, 1968, and April 23, 1969. Higgins sued individually and as representative of the class of debenture holders who had purchased debentures between December 1, 1968, and April 23, 1969.

On December 11, 1970, plaintiffs filed their Amended Complaint adding as a defendant Eppler, Guerin & Turner, a brokerage firm, hereinafter referred to as EGT. Also, Plaintiff William M. Higgins was replaced by another representative of the debenture holders, Mrs. Margaret B. Sonntag.

Plaintiffs' Motion to Amend and Second Amended Complaint were filed on February 25, 1971. The Second Amended Complaint alleges that Defendant LTV Electrosystems, Inc. and EGT, jointly and severally, made misrepresentations and omitted material representations.

It is clear from the papers and depositions in this action that the named plaintiffs, in proving the misrepresentations and omissions made to them by certain people, will not provide all the proof required on the issue of misrepresentations and omissions made to other members of the class they seek to represent. In this regard, it is important that while the Report of EGT of December 18, 1968, upon which plaintiffs focus as an important link in the chain of misrepresentations claimed to have been made by both defendants, Plaintiff Sonntag did not read nor even see the 1968 Report. Significantly, Plaintiff Carlisle, Jr. received much of his information concerning Defendant LTV Electrosystems, Inc. from his own son, Plaintiff Carlisle III. All three named plaintiffs based to a great extent their decision to purchase LTV Electrosystems, Inc. securities upon the claimed oral representations of several individuals, which representations were unique to the plaintiffs to whom made. It is not clear that the representations

made to the named plaintiffs are substantially the same as those made to other members of the classes sought to be represented.

In Clement A. Evans & Co. v. Mc-Alpine, 434 F.2d 100 (5 Cir. 1970), the Fifth Circuit held that reasonable reliance is a key element of a successful 10b–5 action. That case points out that plaintiff's sophistication, expertise, and business acumen in the financial community, his access to information and opportunity to detect any fraud are all relevant considerations in determining the exercise of reasonable diligence. *Id.* at 104.

In addition to examining the variety of alleged misrepresentations and omissions made to members of the two classes sought to be represented by the named plaintiffs, this Court would be required to determine whether reasonable reliance existed as to each member of each of the classes urged. Further, the debenture holders and the stockholders have differing rights, and the considerations motivating purchase of debentures are very different from the considerations motivating purchase of stocks. Consideration involved in the purchase of debentures include the greater amount of money to be invested (a debenture having many times the value of a share of stock), the basis of convertibility into stock, call dates, interest rates, and the property securing the debentures.

Further, Defendant EGT and Defendant LTV Electrosystems, Inc. raise defenses which will vary greatly as to each defendant and from purchaser to purchaser. Defendant LTV Electrosystems, Inc. asserts that reliable information concerning its financial condition was released as it became available to the company and that each member of the alleged classes had a quantity of information available to him not necessarily the same as to other members of his class.

Edward R. Smith, one of the plaintiffs' attorneys, is a member of the proposed debenture-holder class and owns debentures with a face value totaling $100,000. Smith is not a named party to this suit. According to his deposition, Smith chose to act as an attorney for the representatives of both classes alleged to exist in this case, rather than as representative of the class of debenture holders. Further, his deposition demonstrates the genesis of this case as a class action. Smith testified that he wanted to attend the LTV Electrosystems, Inc. stockholders' meeting in April of 1969 and that in order to insure his admittance he sought proxy votes from stockholders. The Carlisles gave Smith their proxies after they were contacted by a broker for EGT who informed them that Smith would attend the stockholders' meeting and could make use of the Carlisle proxies. After attending the stockholders' meeting, Smith conferred with Dean Carlton, also an attorney in this action, for the purpose of discussing the institution of litigation against LTV Electrosystems, Inc. At that time, Smith told Carlton that he had talked to some other individuals who would also be interested in litigation. Smith then reported to the Carlisles that he had just about made up his mind to file a suit and that he would file it individually, on behalf of only himself. He added, however, that if the Carlisles wanted to be represented, the suit could be filed in the form of a class action. Smith testified that he left it up to the Carlisles whether or not they wished to become involved. [Deposition of Edward R. Smith, March 18, 1971, CA3–3943–A.]

Also in his deposition, Smith testified as follows in explaining how Mike Higgins became one of the original plaintiffs in the action:

"Well, from the standpoint of my being a bond holder in the case and realizing that if the bond holders were

to be covered by this class action we would probably need a bond holder. I talked to Mr. Mike Higgins, who was a personal friend of both me and my partner and whom I knew to own a small number of bonds, purchased also on the basis of the Eppler, Guerin & Turner report or the representations of their personnel, and I visited with him as to the fact that we were contemplating a class action, and he was interested in proceeding on it." *Id.* at 51.

■ Smith's own testimony gives every indication that this action is the result of an effort to seek out people willing to have a class action instituted in their names as representatives of a class. Such activity constitutes an abuse of the class action, which courts should not permit. See Manual for Complex and Multidistrict Litigation § 1.61. As has been stated by the Honorable Milton Pollack, "[U]nless the judge is careful to see that only appropriate cases are accorded class treatment, he may not only be creating an administrative morass for his court, but he may also be providing . . . [opportunities for serious abuse which lurk in Rule 23]." Pollack, M., United States District Judge, Southern District of New York, The Pretrial and Trial of Antitrust Cases, Address at the Seminar for Newly Appointed Federal District Court Judges, The Federal Judicial Center, Washington, D. C., March 31, 1971.

Finally, it should be noted that there are only 48 members in the proposed class of holders of debentures (face value $1000 each), and therefore the numerosity required by Rule 23 does not exist as to this class.

■ For the foregoing reasons this Court finds that this suit fails to meet the requirements of Rule 23(b) (3), F. R.Civ.P. The court finds the questions of fact and law common to the members of the classes alleged do not predominate over questions of fact and law affecting only individual members of the classes. Further, the Court finds that a class action in this particular case is not superior to other methods for the fair and efficient adjudication of this controversy. The continuance of this cause as a class action would not be in furtherance of the very purpose of the class action device, the prevention of a multiplicity of suits based on a common wrong. Due to the uniqueness of information supplied each member, the reliance each placed on the representations made to him, the reasonableness of his reliance, and the damages suffered by each individual member, the continuance of this suit as a class action would serve only to defeat the purposes of the class action device and would produce a judicially unmanageable trial. Further, the prosecution of this suit as a class action would constitute an abuse of Rule 23, F.R.Civ.P.

It is accordingly ordered, adjudged and decreed that this suit is not appropriate to be maintained as a class action by the named plaintiffs, and defendants' objections to the maintenance of the suit by the named plaintiffs as a class action are sustained. Plaintiffs are granted leave to file a Third Amended Complaint within 10 days from this date, on the basis of which this suit shall proceed as an action by named plaintiffs in their own behalf. Following service of such Third Amended Complaint upon defendants, they shall have 10 days within which to move or otherwise plead in response thereto. All parties shall have 90 days from January 15, 1972, within which to complete discovery on the merits. Further orders with respect to pretrial procedures will issue when appropriate.