**J.D. WEATHERLY and Elliott S. Horwitch, Appellants,**

v.

**DELOITTE & TOUCHE, Elias Zinn, Julius Zinn, Dennis Lam, and Ronald Begnaud, Appellees.**

No. 14–94–00462–CV.

Court of Appeals of Texas, Houston (14 Dist.).

July 20, 1995.

Rehearing Overruled Sept. 28, 1995.

Robin Harrison, Robert Brown, Justin Campbell, III, Robert Remy, Houston, for appellants.

O. Clayton Lilienstern, Julius Glickman, Gail Slaughter, Kenneth Hughes, Gregg Laswell, Laura Eastman, Houston, for appellees.

Before YATES, FOWLER and DRAUGHN,* JJ.

## OPINION

DRAUGHN, Justice.

This is an interlocutory appeal from an order denying class certification. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 51.014(3) (Vernon 1986). Appellants, J.D. Weatherly and Elliott Horwitch, bring two points of error complaining the trial court abused its discretion in denying class certification. Because we find the trial court abused its discretion, we reverse and remand.

Entertainment Marketing, Inc. (EMI) is a wholesale distributor of consumer electronics and computer products. On April 16, 1987, EMI sold convertible subordinated debentures and common stock to the public. Appellants purchased debentures as part of EMI's public offering. On April 15, 1992, appellants filed suit alleging that EMI's management and accountants conspired to misre- present EMI's net income in separate, but identical, prospectuses circulated to investors in connection with the public offering. Specifically, appellants alleged that EMI's top management (the EMI defendants) overstated EMI's sales and net income by reporting fictitious sales of EMI inventory in prior fiscal years.[1] Appellants also alleged that EMI's accountants (the accountant defendants): (1) knew at the time they audited EMI's financial statements that EMI was planning the April 1987 public offering of debentures and common stock; (2) participated in reporting EMI's overstated financial performance; and (3) were reckless or negligent in audits of EMI.[2] Appellants alleged that EMI could not have made the securities offering if its true financial performance had been disclosed to the public.

In each year following the April 1987 offering, EMI reported a loss. In 1992, EMI declared bankruptcy. The undisputed evidence shows that neither the debentures nor the stocks were ever traded at a price as high as the price at which they were offered in April 1987. Thus, all investors who purchased EMI debentures and/or stock in April 1987, suffered losses on their investment.

In their petition, appellants alleged multiple causes of action and sought certification of the class of plaintiffs who: (1) purchased EMI debentures and stocks between April 16, 1987, and April 30, 1987; and (2) lost all or part of their investments. Appellants subsequently filed a separate Motion for Class Certification. On November 5, 1993, the trial court held a hearing at which appellants offered only certain exhibits. On November 24, 1993, the trial court, without entering an order, denied appellants' motion. Appellants filed a motion seeking a rehearing on their earlier Motion for Class Certification and alternatively, seeking certification of the class of plaintiffs who purchased only debentures. On April 14, 1994, the trial court denied appellants' motions and appellants

---

\* The Honorable Joe L. Draughn sitting by assignment.

1. EMI's top management included: Elias Zinn (President, C.E.O., and Director), Dennis Lamm (Senior Vice President, Secretary and Director), and Julius Zinn (Director).

2. EMI's accountant was the firm of Deloitte & Touche (Deloitte), the successor in interest to Touche Ross & Co. Ronald Begnaud was the partner in charge of Deloitte's audit of EMI's financial statements for the fiscal years in question.

perfected this appeal. The trial court's order does not state the reason for denial of class certification and the record does not contain findings of fact or conclusions of law, despite appellants' timely request. On appeal, appellants request only that their claim under the Texas Securities Act, TEX.REV.CIV.STAT.ANN. art. 581–33 (Vernon Supp.1995) (the Act), be certified as a class action.

In two points of error, appellants contend the trial court abused its discretion in denying their motions for class certification under TEX.R.CIV.P. 42.

In order to gain certification of a class action, a party must meet all the requirements of TEX.R.CIV.P. 42(a) and satisfy one of the subsections of TEX.R.CIV.P. 42(b)(4). Under Rule 42(a), appellants must show:

(1) numerosity—the number of plaintiffs is so numerous that joinder of all class members is impracticable;

(2) commonality—there are questions of law or fact common to the class;

(3) typicality—the claims of the proposed representatives are typical of those of the class; and

(4) adequacy—the proposed representatives will fairly and adequately protect the interest of the class.

TEX.R.CIV.P. 42(a)(1)–(4).

Appellants claim they satisfied Rule 42(b)(4), because they showed that:

(1) questions of law or fact common to the members of the class predominate over questions affecting individual members; and

(2) a class action is superior to other available methods for the fair and efficient adjudication of their claim.

TEX.R.CIV.P. 42(b)(4).

■ There is no right to bring a lawsuit as a class action. *Vinson v. Texas Commerce Bank*, 880 S.W.2d 820, 824 (Tex.App.—Dallas 1994, no writ). Rather, rule 42 provides only that the trial court *may* certify a class action if the plaintiff satisfies the requirements of the rule. *Id.* (emphasis in original). However, when the trial court makes a decision of class status at an early stage of the proceeding before supporting facts are fully developed, it should err in favor of, and not against, maintenance of the class action. *National Gypsum Co. v. Kirbyville Indep. School Dist.*, 770 S.W.2d 621, 627 (Tex.App.—Beaumont 1989, writ dism'd w.o.j.); *Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764, 774–75 (Tex.App.—Fort Worth 1986, no writ). This is so because the class certification order is always subject to modification should later developments during the course of the trial so require. *Id.;* see TEX.R.CIV.P. 42(c)(1).

■ Trial courts enjoy broad discretion in determining whether a lawsuit should be maintained as a class action. *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371 (Tex. App.—El Paso 1993, no writ). At the certification stage, the burden of proof is on the plaintiffs to establish their right to maintain an action as a class action. *Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764, 773 (Tex.App.—Fort Worth 1986, no writ). Though they must do more than merely allege that the requirements have been met and must at least show some facts to support certification, class proponents generally are not required to prove a prima facie case or make an extensive evidentiary showing in support of a motion for class certification. *Clements v. League of United Latin American Citizens*, 800 S.W.2d 948, 952 (Tex. App.—Corpus Christi 1990, no writ); *Brister*, 722 S.W.2d at 773. The trial court may base its decision on pleadings or other material in the record. *Clements*, 800 S.W.2d at 952; *National Gypsum Co.*, 770 S.W.2d at 626–27.

■ On appeal, review of trial court's decision granting or denying certification is limited to determining whether the court abused its discretion. *Morgan v. Deere Credit, Inc.*, 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Amoco Prod. Co. v. Hardy*, 628 S.W.2d 813, 816 (Tex.App.—Corpus Christi 1981, writ dism'd). In reviewing the trial court's ruling on certification, the appellate court is required to view the evidence in a light most favorable to the trial court's action, and indulge every presumption in favor of the trial court's action. *Dresser*, 847 S.W.2d at 372; *Angeles/Quinoco Securities Corp. v. Collison*, 841 S.W.2d 511, 513 (Tex.App.—Houston

[14th Dist.] 1992, no writ). A trial court does not abuse its discretion when it bases its decision on conflicting evidence. *Wiggins v. Enserch Exploration, Inc.*, 743 S.W.2d 332, 334 (Tex.App.—Dallas 1987, writ dism'd w.o.j.); *RSR Corp. v. Hayes*, 673 S.W.2d 928, 930 (Tex.App.—Dallas 1984, writ dism'd). That the trial court, in the opinion of the appellate court, made an error in judgment, does not alone demonstrate an abuse of discretion. *Morgan*, 889 S.W.2d at 365; *Dresser*, 847 S.W.2d at 371. Rather, a trial court abuses its discretion when it: (1) does not properly apply the law to the undisputed facts; (2) acts arbitrarily or unreasonably; or (3) rules upon factual assertions not supported by material in the record. *See Angeles/Quinoco*, 841 S.W.2d at 513; *Wiggins*, 743 S.W.2d at 334; *RSR*, 673 S.W.2d at 930; *Mahoney v. Cupp*, 638 S.W.2d 257, 261 (Tex. App.—Waco 1982, no writ).

 In this case, the trial court abused its discretion on all three counts. There was simply no basis in law or fact for the trial court to have denied class certification in this case. Appellees cite numerous federal trial court opinions from the various circuits to support a myriad of secondary propositions under FED.R.CIV.P. 23 which might support the trial court's unstated basis for its ruling. In the area of class certification, cases can be found to support practically any point of view. *Simon v. Westinghouse Elect. Corp.*, 73 F.R.D. 480, 483 (E.D.Pa. 1977). Federal decisions regarding class actions are persuasive, but they are not binding authority. *Reserve Life Ins. Co. v. Kirkland*, No. 14–93–00161–CV, slip op. at 13, —— S.W.2d ——, —— [1994 WL 588569] (Tex. App.—Houston [14th Dist.] October 27, 1994 n.w.h.). More importantly, reference to federal case authority construing FED.R.CIV.P. 23 is only appropriate in the absence of Texas case law or case law from *this* circuit. *See Adams v. Reagan*, 791 S.W.2d 284, 288 (Tex.App.—Fort Worth 1990, no writ). Based on the law of this state and this circuit, we conclude that appellants met all the requirements of subsection (a) and satisfied subsection (b)(4) of TEX.R.CIV.P. 42. Be-

cause appellees brief extensively the issues of commonality and adequacy of representation, we address those issues first.

### Commonality of Issues and Predominance of Common Issues and Facts

 The factual or legal basis for suit must be common to all members in a class action. *Dresser*, 847 S.W.2d at 372. Questions common to the class are those questions which, when answered as to one class member, are answered as to all class members. *Brister*, 722 S.W.2d at 772; *RSR*, 673 S.W.2d at 930. The commonality requirement does not mean that all questions of law and fact must be identical, but that an issue of law or fact exists that inheres in the complaints of all the class members. *Dresser*, 847 S.W.2d at 372.

 Common issues of law or fact must also predominate over the issues requiring individual adjudication for each class member. *Brister*, 722 S.W.2d at 772. The test to be used in evaluating the predominance issue is not whether the common issues outnumber the individual issues, but whether common or individual issues will be the object of most of the efforts of the litigants and the court. *National Gypsum*, 770 S.W.2d at 625; *Brister*, 722 S.W.2d at 772. If common issues predominate, then a judgment in favor of the class members should decisively settle the entire controversy and all that should remain is for other members of the class to file proof of their claim. *Id.* In order to decide whether the common issues predominate, the court must initially identify the substantive law issues that will control the outcome of the litigation. *Id.* The purpose of the court's inquiry into the substantive law issues is to determine whether the character and nature of the case satisfies the requirements of the class action procedural rules, not to weigh the substantive merits of each class member's claim. *Id.*

 Appellees argue that reliance and individual choice of law issues predominate in this litigation and defeat appellants' assertion of commonality.[3] We disagree. Article 581–

---

**3.** In a footnote, appellees suggest appellants seek relief under a fraud-on-the-market theory, which

appellees assert is not cognizable under Texas law. However, whether appellants have stated a

33 of the Texas Securities Act does not require the buyer to prove reliance on the seller's misrepresentation or omission. *Granader v. McBee*, 23 F.3d 120, 123 (5th Cir. 1994); *Anheuser–Busch Companies, Inc. v. Summit Coffee Co.*, 858 S.W.2d 928, 936 (Tex. App.—Dallas 1993, writ denied). An omission or misrepresentation is material if there is a substantial likelihood that a *reasonable* investor would consider it important in deciding to invest. *See id.* (emphasis added). An investor is not required to prove that he would have acted differently but for the omission or misrepresentation. *Id.* Thus, in the instant case, the focus under the Texas Securities Act is on the conduct of the seller or issuer of securities, i.e., whether they made a material misrepresentation, not on the conduct of individual buyers. A misrepresentation that is material to one class member as a reasonable investor will be material as to all class members. *See id.; Brister*, 722 S.W.2d at 772.

The accountant defendants point out that the only allegation against them is that they materially aided the seller or issuer of EMI securities. *See* Tex.Rev.Civ.Stat.Ann. art. 581–33(F)(2). They argue that "aider" liability requires each individual investor to prove causation. In support of their argument, the accountant defendants rely primarily on *In re Gas Reclamation Inc. Securities Litigation*, 733 F.Supp. 713 (S.D.N.Y.1990). In *Gas Reclamation*, the court recognized a causation requirement for proving aider liability under federal securities law. *See id.* at 721–22. While that case also involved a pendent Texas Securities Act claim under section 33(F)(2), the court never held that a buyer is required to prove causation under section 33(F)(2). Indeed, there is nothing in the Act, the Comment, or any case interpreting the Act to suggest that section 33(F)(2) imposes an additional causation requirement on the buyer to establish the aider's liability.

Even if we were to recognize a causation requirement, that standard only requires the plaintiffs to prove "that the untruth was in some reasonably direct or proximate way responsible for their loss." *See id.* at 721 (citing *Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)). In other words, the plaintiffs must prove that "but for the fraud, they would not have incurred the loss." *Gas Reclamation*, 733 F.Supp. at 721.[4] As we stated, the undisputed evidence in this case is that the debentures and stocks were never traded at a price as high as high as the price at which they were offered in April 1987. Appellants allege the accountant defendants knew about the fraudulent sales by the EMI defendants and then participated in a fraud by misrepresenting the financial stability of EMI in documents circulated in connection with the public offering. According to appellants, "but for" the fraud, the value of EMI securities would not have been inflated and appellants and other investors/proposed class members would not have incurred the loss. Thus, the focus of the causation issue in this case would not be on the individual class members' reliance, but on the accountant defendants' participation in the fraud and whether that conduct caused the investment to lose its value. *See id.* Further, because appellants seek class certification only on behalf of those investors who purchased securities during the public offering and who "lost all or part of their investment," the only individual questions in this class action will be the amount of the loss for each investor. Clearly, individual reliance or causation issues do not defeat commonality in this case.

As we noted, appellees also contend individual choice of law issues are predominant and defeat commonality. Many of the securities offered by EMI were allocated to na-

---

cause of action is more properly left to special exceptions and a motion for summary judgment, not a motion for class certification. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983); *Centennial Ins. Co. v. Commercial Union Ins. Co.*, 803 S.W.2d 479, 481 (Tex.App.—Houston [1st Dist.] 1991, no writ). Moreover, appellants have arguably stated a proper claim under

state law for purposes of class certification. *See Adams*, 791 S.W.2d at 288–90.

4. The *Gas Reclamation* court characterized this as "loss causation" as distinguished from "transaction causation," i.e., but for the fraud, plaintiff would not have invested. *See id.* at 721.

tional brokerage houses. As a result, of the fifty-five EMI debentureholders identified by appellants, only Weatherly is from Texas. In addition, appellants identified more than one hundred and forty EMI stockholders from twenty-two states, Bermuda and Canada.

Although the trial court did not have evidence of the laws of other states before it, appellees assert that the Texas Securities Act differs from the Uniform Securities Act adopted by the majority of states. TEX.REV. CIV.STAT.ANN. art. 581–33 (Vernon 1964 & Supp.1994), Comment On Specific Sections; 1 BLUE SKY L.REP. (CCH) 5500. In particular, appellees maintain that the Uniform Act does not contain a section on "aider" liability. See TEX.REV.CIV.STAT.ANN. art. 581–33, Comment § 33(F); 1 BLUE SKY REP. 5550, Uniform Securities Act § 410. Relying primarily on federal district court cases from Massachusetts, appellees further argue the burden is on appellants, as class proponents, to show that the law of the forum state is the same as the laws of the other states. *Gorsey v. I.M. Simon & Co., Inc.*, 121 F.R.D. 135, 140 (D.Mass.1988); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 558 (D.Mass.1988).

■ Appellees' arguments are without merit. First, by pointing out that the Texas Securities Act differs from the Uniform Securities Act, appellees are implying that the laws of the states where class members purchased EMI securities and which have adopted the Uniform Act apply. However, it is improper at the certification stage for this court to determine which law applies. *See*

*Angeles/Quinoco*, 841 S.W.2d at 516–17. Second, even if we could consider the application of foreign law to this dispute, the burden is on appellees, not appellants, to demonstrate the application of that law. Under Texas law the burden is on the party asserting the application of foreign law to first show the existence of a true conflict of laws and then to demonstrate which law should apply based on state contacts to the asserted claims. *See In re First Republicbank Securities Litigation*, Nos. 3–38–9461–H, 3–88–1251–H, 1989 WL 108795 at *9–10 (N.D.Tex. 1989); *Longden v. Sunderman*, 123 F.R.D. 547, 555–56 (N.D.Tex.1988) (holding that rule 23 does not require that all questions of law be identical across class members' claims and that party opposing class certification failed to show substantive variations in law among the states). Finally, appellees failed to present evidence to the trial court of the securities laws actually adopted by the other states.[5] In the absence of such a showing, it is presumed the laws of those other states are the same as Texas law. *See Osborn v. Kinnington*, 787 S.W.2d 417, 419 (Tex.App.— El Paso 1990, writ denied). Therefore, the trial court could not have concluded from the undisputed facts in the record that the law of other states would apply.[6]

■ In this case, appellants allege securities fraud and conspiracy to commit securities fraud. Proof of liability will focus solely on appellees' conduct and core documents (identical prospectuses and financial statements contained therein) disseminated to all members of the proposed class. In other

5. In listing the jurisdictions that have adopted the Uniform Securities Act, the BLUE SKY L.REP. states, "the Uniform Securities Act has been adopted or *substantially adopted with modifications* in the following jurisdictions." (emphasis added). It is possible that in adopting the Uniform Act, other states may have adopted provisions similar to the Texas Act.

6. For the record, the only evidence before the trial court suggests application of Texas law, Under the U.S. Supreme Court's holding in *Phillips Petroleum v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the forum state is not precluded from applying its own law in a class action so long as it has a "significant contact or aggregation of contacts" to the claims asserted by each member of the plaintiff class

such that application of the forum law is not arbitrary or unfair. 472 U.S. at 818–19, 105 S.Ct. at 2978. In this case, all appellees are Texas residents. The alleged wrongful conduct, i.e., the preparation of false financial documents, that is the basis of the suit occurred in Texas. Relying on *Lutheran Brotherhood*, appellees argue that the law of the state where the securities transaction occurred controls. 829 S.W.2d 300, 310 (1992). *Lutheran Brotherhood* is distinguishable. It did not involve a class action. Furthermore, in that particular case, the court held that the state where the transaction occurred was important because that is also where the reliance occurred. *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 148. In this case, reliance is irrelevant.

words, proof of liability will be based on the same evidence and involve the same issues for all proposed class members. Those common issues include: (1) the existence of misrepresentations in those core documents; (2) the materiality of those misrepresentations; (3) the role of appellees as either "sellers," "controlling persons," or "aiders;" and (4) damages.

"Many courts have held that where members of the class are subject to the same misrepresentations or omissions by reason of common documents, or where the defendant is alleged to have engaged in a common course of conduct, the commonality requirement is met and class certification is appropriate." *Adams,* 791 S.W.2d at 291 (citations omitted). As noted by the court in *Adams,* a class action is a particularly well-suited method of adjudicating a securities fraud actions because such litigation, more often than not, involves large numbers of plaintiffs whose core complaints are closely similar if not identical. *Id.* at 292. The fact that *Adams* did not involve a nationwide class does not, as appellees suggest, make it inapposite, especially where, as in this case, there was no evidence before the trial court suggesting application of other law. *See American Express Travel Related Services Co., Inc. v. Walton,* 883 S.W.2d 703, 710 (Tex. App.—Dallas 1994, no writ) (holding that the trial court did not abuse its discretion in certifying nationwide class where court had not yet ruled on choice of law). Accordingly, appellants established that common issues of law and fact predominate.

### Adequacy of Representation

■ The named parties in a class action must fairly and adequately protect the interests of the class. *Dresser,* 847 S.W.2d at 373. This requirement consists of two requirements: (1) it must appear that the representative parties, through their attorneys, will vigorously prosecute the class claims; and (2) there must be an absence of conflict or antagonism between the interests of the named plaintiffs and those of other members of the proposed class. *Reserve Life,* slip op. at 12, —— S.W.2d at ——; *Adams,* 791 S.W.2d at 291.

■ Adequacy of representation is a question of fact and must be determined based on the individual circumstances of each case. *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 150 (Tex.App.—Austin 1995, n.w.h.); *Dresser,* 847 S.W.2d at 373. It is addressed to the sound discretion of the court. *Id.* Factors affecting this determination include: (1) adequacy of counsel; (2) potential for conflicts of interest; (3) the personal integrity of the plaintiffs; (4) the representative's familiarity with the litigation, and their belief in the legitimacy of the grievance; (5) whether the class is unmanageable because of geographical limitations; and (6) whether the plaintiffs can afford to finance the class action. *Id.*

■ The only antagonism or conflict suggested by appellees is the fact that appellants are debentureholders and other proposed class members are stockholders. Citing several federal district court cases, appellees suggest that because appellants are debentureholders, their interests in this litigation are antagonistic to those of stockholder class members. *See Model Associates, Inc. v. U.S. Steel Corp.,* 88 F.R.D. 338, 339–40 (S.D.Oh. W.D.1980); *Blumenthal v. Great Am. Mortgage Investors,* 74 F.R.D. 508, 516 (N.D.Ga. 1976); *Carlisle v. LTV Electrosystems, Inc.,* 54 F.R.D. 237, 239 (N.D.Tex.1972). It is true that considerations motivating the purchase of debentures are very different from those motivating the purchase of equity shares of stock. *See id.* In particular, appellees observe that debentureholders are creditors of the corporation and entitled to payment before shareholders upon dissolution. *See* BLACK'S LAW DICTIONARY 401 (6th ed. 1990). However, that fact is irrelevant for purposes of our inquiry because appellants' claim is not against the corporate issuer of securities, EMI, and does not involve liquidation. Appellants do not seek class representation in a bankruptcy proceeding. Further, appellants' considerations or motivations in purchasing debentures rather than stocks are inconsequential because their Texas Securities Act claim does not require them to prove reliance. Rather, the issue is whether a reasonable investor would have considered the in-

formation in the prospectuses important in deciding to invest. *See Anheuser–Busch,* 858 S.W.2d at 936. In any event, there is no antagonism such as existed in *Forsyth* where a number of class members actually intervened to oppose the class action. *See Forsyth,* 903 S.W.2d at 148.

Nevertheless, appellees, again relying on various federal district court cases, insist that the trial court did not abuse its discretion by denying class certification under the first prong of the adequacy of representation test based on appellants lack of personal knowledge of the underlying claim. The law in Texas is to the contrary. As stated by this court in *Reserve Life,* the question is whether class representatives, *through their attorneys,* will vigorously prosecute the class claims. *Reserve Life,* slip op. at 9, —— S.W.2d at —— (emphasis added). In other words, the qualifications and experience of class counsel is of greater consequence than the knowledge of class representatives. *Longden,* 123 F.R.D. at 558.

Here, appellees do not question the competence or zeal of appellants' counsel in pursuing this litigation. Rather, they point to the fact that appellants' knowledge of the facts giving rise to their claims originates from their attorneys, not from their personal knowledge. As noted by the *Longden* court, in light of conspiracy and concerted scheme allegations and the complex nature of securities law, it is unreasonable to expect class representatives to possess detailed knowledge of the facts surrounding the potential fraud. *Id.*

The record in the instant case demonstrates that appellants have sufficient knowledge of the nature of their claims as well as their duties as class representatives. Appellants reviewed the petition in this case before it was filed. They know that EMI allegedly recorded sales that did not occur. They also know that the accountant defendants were allegedly negligent in their year-end audits of EMI sales transactions and may have conspired with EMI with regard to those fraudulent sales. More importantly, they have personal knowledge of the only relevant facts to which they and other class members will be called upon to testify at trial; namely,

that they purchased EMI securities based on the prospectuses circulated during the public offering on April 16, 1987, and that their securities are now worthless.

Furthermore, appellants understand that as class representatives they represent other purchasers of EMI stocks and debentures. Specifically, they know that class members include "people that did the initial purchase on 6 and ½ percent subordinated ... debentures and ... the stock purchasers of the same date." They are aware that their duties include participating in the decision process as required, appearing at hearings, depositions and at trial, and monitoring the progress of the litigation. Few persons, other than attorneys involved in class litigation, can accurately articulate the full extent of the fiduciary responsibilities and other efforts required of a class plaintiff. *Id.*

Appellees point out that appellants have not attended any hearings in this case, have not been involved in the discovery process, and have left management of this litigation to their attorneys, who initially advised them to pursue this action and who are now financing this lawsuit. However, class certification does not require a higher standard of involvement from a proposed class representative than from an individual plaintiff. *Gibb v. Delta Drilling Co.,* 104 F.R.D. 59, 77 (N.D.Tx.1984). Further, rule 42 does "not require as a condition of certification that there be a preliminary showing of willingness and ability to bear costs of representation." *Salvaggio v. Houston Indep. School Dist.,* 709 S.W.2d 306, 310 (Tex.App.—Houston [14th Dist.] 1986, writ dism'd). Rather, the rule requires only that the class representatives fairly and adequately protect the interest of the class. *Id.* If other class members or the trial court later conclude that appellants or counsel cannot adequately protect the interests of the class, the court can decertify the class. Tex.R.Civ.P. 42(c).

Finally, appellees complain that appellants did not diligently pursue certification in this case. *See Forsyth,* 903 S.W.2d at 149. Where there is such a complaint, this court has held there must be a showing of prejudice to the class or the opposing party. *Angeles/Quinoco,* 841 S.W.2d at 515. In this

case, appellees failed to preserve error on this issue because they did not bring their complaint about delay to the trial court's attention. *Id.; see* TEX.R.CIV.P. 42(a). Even if error had been preserved, the undisputed evidence in the record shows that appellants moved for class certification "as soon as practicable" and that appellees were not prejudiced by any alleged delay. *See* TEX.R.CIV.P. 42(c)(1). Appellants satisfied the adequacy of representation requirement.

### Named Plaintiffs' Claims Are Typical of the Class

■■■■ The claims of the class representatives must be typical of the class as a whole. *Dresser,* 847 S.W.2d at 372. That is, the representatives must "possess the same interest and suffer the same injury." *Id.* (quoting *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453, 462 (1977)). Although it is not necessary that the named representative suffer precisely the same injury as the other class members, there must be a nexus between the injury suffered by the representative and the injuries suffered by other members of the class. *Dresser,* 847 S.W.2d at 372. To be typical, the named plaintiffs' claims must arise from the same event or course of conduct giving rise to the claims of other class members. *Adams,* 791 S.W.2d at 290. These claims must also be based on the same legal theory. *Id.* Ordinarily, the presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff destroys the typicality of the class. *Id.* However, factual differences have not defeated class certification in other securities actions where the claims arose from the same legal theory. *Id.*

■■■■ Relying on previous arguments, appellees contend that appellants are not typical of other class members' claims because: (1) appellants are debentureholders, not stockholders; and (2) there is a materiality or reliance defense peculiar to appellants; that is, appellees contend that appellants could not specifically recall whether they read the prospectus before investing. As we stated, the fact that appellants are debentureholders does not significantly distinguish their claims from those of other class members who are stockholders. Moreover, although reliance is not an element of appellants' claim, the evidence establishes, contrary to appellees' contentions, that appellants read the prospectus before investing. Both Weatherly and Horwitch could not specifically recall when they received the EMI prospectus; however, when questioned further about whether he read the prospectus, Weatherly testified: "I believe, to the best of my recollection, I did." Weatherly also testified that he relied on the prospectus, referring in particular to the auditors' statement from Deloitte & Touche. Similarly, Horwitch testified that he read the prospectus before consulting with his accountant about EMI and that he consulted with his accountant before making the EMI investment.

Clearly, there is a nexus between appellants' injury and other class members' injury because appellees allegedly made the same misrepresentations in the same documents circulated to all investors, each of whom lost money on their investment. *See Dresser,* 847 S.W.2d at 372. Furthermore, appellants and other class members rely on the same theory of liability under the Texas Securities Act. *See Adams,* 791 S.W.2d at 290. Appellants therefore met the typicality requirement.

### Numerosity

■■■■ This determination is not based on numbers alone. *National Gypsum,* 770 S.W.2d at 624. Rather, the test is whether joinder of all members is practicable in view of the size of the class and such factors as judicial economy, the nature of the action, geographical locations of class members, and the likelihood that class members would be unable to prosecute individual lawsuits. *Id.* As previously described, appellants have identified at least fifty-five individuals and entities who purchased EMI debentures and at least one hundred and forty-four individuals and entities who purchased EMI stock on or about April 16, 1987 through April 30, 1987. Appellees contend that appellants did not satisfy this requirement because appellants did not adequately identify those "purchasers who lost all or part of their investments" as alleged in their petition. This

argument is without merit. As we have stated, the undisputed evidence shows that the price of EMI securities never rose as high as the April 1987 purchase price. Thus, all purchasers of securities during the public offering and therefore, all proposed class members lost money on their investments. We cannot say that appellants failed to identify the proposed class merely because they do not distinguish those class members who lost all their investment from those who lost only part of their investment as a result of selling out before the price dropped further. Thus, appellants have adequately identified the members of the proposed class.

Appellees also argue that appellants can only represent the fifty-five debentureholders and that joinder of that many parties is not impracticable. Appellees' argument presumes that appellants' interests as debentureholders are antagonistic to those of other proposed class members who are only stockholders. As we have noted, there is no reason why appellants cannot represent both debentureholders and stockholders. Clearly, joinder of some two hundred parties dispersed throughout the United States, Bermuda, and Canada is impracticable.

Appellees further argue that the trial court could reasonably have concluded that joinder was not impracticable because the record shows that only three plaintiffs have so far sought to litigate their claim and that appellants filed this suit only after learning about their claims from their attorney. Considering appellants' circumstances in bringing suit, it is possible that other proposed class members have not pursued litigation of their claims because they are unaware of such claims. In any event, there is no presumption, as appellees suggest, that other class members have chosen not to pursue their claims simply because they have not filed suit or intervened in the proposed class action. Indeed, class certification will enable appellants to provide the necessary notice. *See* Tex.R.Civ.P. 42(c). If after receiving notice other class members express a desire not to pursue this litigation, the trial court can decertify the class. *See id.*

■■■ Finally, appellants point out that if the denial of class certification is upheld,

other members of the proposed class will be barred by limitations from prosecuting their claims. *See* 15 U.S.C. 77m (1981); 1 Blue Sky L.Rep. (CCH) 5550, Uniform Securities Act § 410(e); Tex.Rev.Civ.Stat.Ann. art. 581–33(H)(2)(b); *see also Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366, 370 (Tex. App.—Houston [14th Dist.] 1987, no writ) (holding that limitations are tolled by the filing of a class action suit and begin to run again when certification is denied). Appellees assert that we cannot consider appellants' limitations argument at the certification stage because it goes to the substantive merits of their claim. We disagree. Appellants do not ask us to determine whether the *individual* claims of other proposed class members are barred by limitations; they concede that fact. Instead, they argue that the only vehicle by which those proposed class members can pursue their claims is by this class action, which the parties agree was timely filed. One factor to consider in determining the propriety of class certification is whether members of the proposed class will be unable to prosecute individual lawsuits. *See National Gypsum*, 770 S.W.2d at 624. If class certification in this case is denied, other members of the proposed class will be unable to prosecute individual lawsuits due to limitations. That fact favors certification.

Because of the size of the proposed class, the dispersal of class members and the fact that individual claims will be barred by limitations, practicability and judicial economy are best served by prosecuting appellants' claims as a class action. Thus, appellants met the numerosity requirement.

### Superiority of Class Action

■■■ A class action is superior to other methods of adjudication where any difficulties which might arise in the management of the class are outweighed by the benefits of classwide resolution of common issues. *Dresser*, 847 S.W.2d at 375; *National Gypsum*, 770 S.W.2d at 626. In assessing whether a class action is superior, the court may consider whether: (1) class members have an interest in resolving the common issues by class action; (2) class members will benefit from discovery already commenced; and (3)

the court has invested time and effort in familiarizing itself with the issues in dispute. *Id.* This case was set for trial. The record reflects that significant discovery has been completed and that the court has invested considerable time in familiarizing itself with this dispute. Other class members who wish to join the class will benefit from the time and effort invested by the parties and the court to date. Given the commonality of issues and the discovery already completed, the potential filing of some two hundred individual lawsuits would be repetitive and a waste of judicial resources. Thus, we conclude that appellants met this requirement.

Accordingly, we hold that the denial of class certification is not supported by the law or the undisputed facts in the record and, therefore, constituted an abuse of discretion. We sustain appellants' points of error, reverse the trial court's order and remand to that court for proceedings consistent with this opinion.