**MONSANTO COMPANY, et al., Appellants,**

v.

**Mike DAVIS, et al., Appellees.**

No. 10–02–158–CV.

Court of Appeals of Texas, Waco.

Dec. 31, 2002.

Robert M. Corn and Darin L. Brooks, McFall, Sherwood & Breitbeil, P.C., Houston, W. Stephen Rodgers, Rodgers, Miller & McClain, P.C., Bryan, for Appellants.

Joe Kenneth Longley and Philip K. Maxwell, Longley & Maxwell, L.L.P., Austin, Ron Butler, Marlin, Richard A. Shanks, Houston, for Appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVÍS, Chief Justice.

Monsanto Company, Delta and Pine Land Company and D & M Partnership (Defendants), bring this interlocutory appeal from the trial court's certification of a class action brought by Mike Davis and others (Plaintiffs). Defendants claim in fourteen points that the court erred in determining that Plaintiffs' suit should be maintained as a class action. Because the issue of typicality is dispositive, we will not address further points. We reverse the order and remand for further proceedings consistent with this opinion.

## BACKGROUND

This is the third time that a dispute between these Plaintiffs—a group of Texas cotton farmers—and these Defendants—manufacturers and distributors of genetically enhanced cotton seed—arising out of the underlying litigation, has reached us. In the first, we considered a petition for a writ of mandamus brought by Defendants to avoid the production of certain documents for which they claimed a privilege. We conditionally granted the writ of mandamus. *In re Monsanto*, 998 S.W.2d 917 (Tex.App.-Waco 1999, orig. proceeding). In the second, we considered an interlocutory appeal from the trial court grant of class certification brought by Defendants because "dispositive" evidence which they produced was not allowed into the record or considered by the trial court during the certification hearing. *Monsanto Co. v. Davis*, 25 S.W.3d 773 (Tex.App.-Waco 2000, pet. dism'd w.o.j.). In that case, we concluded that the trial court abused its discretion by refusing to consider the evidence which Defendants proffered, and reversed and remanded to the trial court for further proceedings consistent with that opinion. *Monsanto*, 25 S.W.3d at 789.

This lawsuit had its roots in the 1996 cotton planting season. In the fall of 1995, Monsanto placed on the market a new cotton seed with the Bollgard gene, which was genetically engineered to produce an insect-fighting protein. This technology was patented and marketed under the name Bollgard. According to Monsanto's promotional material, a cotton plant with the Bollgard gene would have the ability to fend off common and very destructive pests such as the tobacco budworm, the cotton bollworm, and the pink bollworm.

A farmer was charged two separate charges for the use of the Bollgard cotton seed—the purchase price for the seed and a per-acre-planted "technology licensing fee." Most of the farmers who purchased the seed placed their technology licensing fee on an open account maintained by their local retailer. The retailer was responsible for passing the licensing fee on to Monsanto once the farmer had paid the amount then due.

Plaintiffs brought suit alleging fraud, violations of the Texas Deceptive Trade Practices Act, negligence, and negligent misrepresentation in August 1996 because the Bollgard plant did not perform according to Monsanto's representations. In October, a separate, national class action was filed in Louisiana (*Ren–Dan Farms*), seeking recovery for similar claims relating to the 1996 growing season. *Ren–Dan Farms, et al. v. Monsanto Company, et al.*, Docket No. 68466 (10th Judicial District Court, Natchitoches Parish, Louisiana). Many of the farmers refused to pay the fees due under the technology licensing agreements. In November and December, Monsanto sent collection letters to 108 Texas farmers which stated, "all accounts not paid as of September 1, 1996 are assessed a finance charge of 14% per annum." Based on these collection letters, Plaintiffs amended their petition, adding a

usury claim in August 1997. In November, Monsanto sent out a "corrective action letter" to 100 of the farmers from whom they had not received complaints regarding the finance charge. This letter was designed to withdraw the interest charge.

In May 1998, *Ren–Dan Farms* reached settlement, and a notice was sent to the potential class members, including the members of this suit. The notice included the statement,

> If the proposed settlement is submitted to and approved by the Court, a final judgment will be entered which will dismiss the Action in its entirety, with prejudice, and without costs to any party as against any other party. The Court may also make an incentive award to the Class Representatives. The final judgment, whether favorable or not, will be binding upon all members of the Settlement Class who did not choose to opt out, and will extinguish all claims, rights and remedies which the Class Members might assert against the Defendants that are related to the subject matter of the Action.

The class representatives of this case opted out of the *Ren–Dan Farms* suit. The Louisiana court signed the final judgment of the national suit in July of 1998.

## PERTINENT AUTHORITIES

This court has jurisdiction to hear an appeal from class certification by statutory grant. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(3) (Vernon Supp.2003).

■ A plaintiff has no right to bring a lawsuit as a class action. *Sun Coast Resources, Inc. v. Cooper*, 967 S.W.2d 525, 529 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.). Rather, to achieve class status, the proponent of the claim must first satisfy the four threshold requirements set forth in Rule of Civil Pro-

cedure 42(a): (1) numerosity (the class is so numerous that joinder is impracticable); (2) commonality (there are common questions of fact and law); (3) typicality (the representative's claims are typical of the class); and (4) adequacy of representation (the representative parties will protect the interests of the class).[1] TEX.R. CIV. P. 42(a); *Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425, 433–34 (Tex.2000); *Sun Coast Resources,* 967 S.W.2d at 529. Additionally, the class action must satisfy at least one of the four categories found in Rule 42(b).[2] TEX.R. CIV. P. 42(b); *Southwestern Refining Co.,* 22 S.W.3d at 433–34; *Sun Coast Resources,* 967 S.W.2d at 529.

█ A cautious approach to certification is essential. *Schein v. Stromboe,* 46 Tex. Sup.Ct. J. 103, 111–12, 2002 WL 31426407, at *10, —— S.W.3d ——, —— (2002); *Bernal,* 22 S.W.3d at 434–35. The Court in *Bernal* resoundingly rejected the approach of "certify now and worry later." *Id.* Trial courts must perform a "rigorous analysis" in determining whether the prerequisites to certification are satisfied. *Id.* We review the court's certification decision for an abuse of discretion. *General Mo-tors Corp. v. Bloyed,* 916 S.W.2d 949, 955 (Tex.1996); *Sun Coast Resources,* 967 S.W.2d at 529. We do not indulge every presumption in favor of the trial court's ruling. *Schein,* 46 Tex. Sup.Ct. J. at 111–12, 2002 WL 31426407, at *10, —— S.W.3d at ——; *Bernal,* 22 S.W.3d at 434–35. A trial court abuses its discretion when ruling on class certification if it (1) does not properly apply the law to the undisputed facts, (2) acts arbitrarily or unreasonably, or (3) rules upon factual assertions not supported by the record. *Spera v. Fleming, Hovenkamp & Grayson,* 4 S.W.3d 805, 810 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Sun Coast Resources,* 967 S.W.2d at 529.

## TYPICALITY

█ The Defendants argue in their fifth point that the Plaintiffs fail to meet the prerequisite of typicality because their claims are not subject to the same defenses as those of the unnamed plaintiffs. We agree. Rule 42(a) requires the putative class representative to show typicality— the claims or defenses of class representatives are typical of the claims or defenses

1. "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." TEX.R. CIV. P. 42(a).

2. (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect tot he class as a whole; or (3) where the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or (4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ..." TEX.R. CIV. P. 42(b).

of the class. *Rainbow Group, Ltd. v. Johnson,* 990 S.W.2d 351, 356 (Tex.App.-Austin 1999, pet. dism'd w.o.j.). To be typical of the class, the named plaintiffs must possess the same interest and suffer the same injury as the rest of the class. *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 653 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.). Their claims must arise from the same event or course of conduct giving rise to the claims of the other class members and must be based on the same legal theory. *Id.* The presence of even an arguable defense peculiar to a subset of the putative class members destroys typicality. *Id.; Adams v. Reagan,* 791 S.W.2d 284, 290 (Tex.App.-Fort Worth 1990, no writ).

Here, the Defendants have presented arguable defenses which are peculiar to a subset of the Plaintiffs: res judicata, release, and accord and satisfaction. The notice of settlement for the *Ren–Dan Farms* suit, which the Plaintiffs received, contained the above quoted global release clause. The unnamed Plaintiffs, unlike the named Plaintiffs, failed to opt out of the *Ren–Dan Farms* suit. The global release may have the effect of precluding any and all future claims by the class members who participated (did not opt out of) in that settlement. Such a release may preclude a claim of usury. Because the representative class members opted out of the *Ren–Dan Farms* suit, they are not subject to the same defenses as the unnamed class members. Therefore, the representative class members cannot fulfill the requirement of typicality. Accordingly, the court abused its discretion by certifying the suit as a class action. We sustain the Defendants' fifth point.

We reverse the class certification order and remand this cause for further proceedings. *See Becton Dickinson and Co. v.*

*Usrey,* 57 S.W.3d 488, 498 (Tex.App.-Fort Worth 2001, no pet.).