**FIRSTCOLLECT, INC., Appellant,**

**v.**

**Lynda ARMSTRONG, Individually and on Behalf of All Others Similarly Situated, Appellee.**

**No. 13–98–115–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 6, 1998.

Neil E.Norquest, Chris A. Brisack, Norquest & Brisack, Norton A. Colvin, Jr., Rodriguez, Colvin & Chaney, Brownsville, Thomas O. Deen, Houston, for appellant.

R. Bruce Phillips, Fleuriet, Schell & Phillips, Harlingen, for appellee.

Before SEERDEN, C.J., and HINOJOSA and CHAVEZ, JJ.

## OPINION

HINOJOSA, Justice.

This is an interlocutory appeal from a class certification order. Appellee, Lynda Armstrong, individually and on behalf of all others similarly situated, sued appellant, FirstCollect, Inc., for alleged violations of TEX. REV.CIV. STAT. ANN. art. 5069–11.04 (Vernon 1987).[1] The trial court certified a class consisting of:

---

1. *Repealed by* Act of May 24,1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602 (current version at TEX. FIN.CODE ANN. § 392.303 (Vernon 1998)).

Every person residing in Texas whom FirstCollect, Inc., at any time from April 15, 1993 through the present, charged an amount of money that (1) constituted a charge, fee, or expense incidental to a consumer debt and (2) was not expressly authorized by the agreement creating the debt and not legally chargeable.

FirstCollect raises five issues challenging the certification order. We affirm.

### Factual Background

On January 25, 1996, Armstrong sought emergency medical treatment at Brownsville Medical Center ("Medical Center") in Brownsville, Texas. Coastal Physicians Services ("Coastal"), d/b/a Health Care Business Resources ("Health Care"), was under contract at that time to staff the Medical Center's emergency room. Health Care handled the billing aspects of the relationship between Coastal and the Medical Center. Health Care required that prior to treatment, all Medical Center patients sign an agreement which provided, in relevant part, as follows:

The undersigned agrees whether he signed as agent or a patient, that in consideration of services to be rendered to the patient he hereby individually obligates himself to pay the account in accordance with the regular rates charged by the provider. Should the account be referred to collection, whether it be a collection agency or an attorney, the undersigned agrees to pay the collection expense and reasonable attorney fees equal to 32% of the outstanding balance due. Should protracted litigation result, the court may set an attorney fee in excess of 32% of the balance.

Armstrong signed this agreement, and when her $205 bill was not paid by May 30, 1996, Health Care referred the account to FirstCollect, Inc. for collection.

On May 31, FirstCollect sent Armstrong a letter requesting payment of $270.60—the outstanding $205 plus a collection fee of $65.60.[2] Armstrong's insurance paid $200 on July 20, 1996. Armstrong received letters from FirstCollect on February 17 and 24, 1997, demanding that she pay the unpaid

balance of $70.60. After a conversation with Armstrong's husband on February 25, FirstCollect agreed to waive the fee because the insurance company had paid the claim. Nevertheless, Armstrong paid the fee and then filed this class action suit against FirstCollect alleging the collection agency had violated article 5069–11.04. The trial court denied FirstCollect's motion for summary judgment against Armstrong, and after a brief hearing, certified the class, as set forth above, pursuant to Texas Rules of Civil Procedure 42(a) and (b)(1)(A). FirstCollect appeals from the certification order contending that the requirements of rule 42, as found by the trial court, have not been satisfied.

### Jurisdiction

■ Under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992). Unless a statute specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (orig.proceeding). Section 51.014 of the Civil Practice and Remedies Code specifically allows "a person" to appeal various interlocutory orders, including an order that "(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(3) (Vernon Supp.1998). We conclude we have jurisdiction to review this appeal.

### Scope and Standard of Review

■ A certification order will be reversed only if the record shows a clear abuse of discretion. *St. Louis S.W. Ry. Co. v. Voluntary Purchasing Groups, Inc.*, 929 S.W.2d 25, 29–30 (Tex.App.—Texarkana 1996, no writ); *American Exp. Travel v. Walton*, 883 S.W.2d 703, 711 (Tex.App.—Dallas 1994, no writ). An abuse of discretion is shown if the trial court acts without reference to any guiding principles or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242

2. $205 X 32% = $65.60.

(Tex.1985). A clear failure by a trial court to analyze or apply the law correctly is an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). The reviewing court must view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in favor of that ruling. *Health & Tennis Corp. of Am. v. Jackson*, 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.); *Vinson v. Texas Commerce Nat'l Bank*, 880 S.W.2d 820, 823 (Tex.App.—Dallas 1994, no writ); *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371–72 (Tex.App.—El Paso 1993, no writ).

A member of a class may sue or be sued as a representative party of the class if the following requirements of rule 42(a) are satisfied:

1) the class is so numerous that joinder of all members is impractical;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and
4) the representative party will fairly and adequately protect the interests of the class.

TEX.R. CIV. P. 42(a). In addition, at least one requirement of rule 42(b) must be met before a class action may be maintained. *See* TEX.R. CIV. P. 42(b). In the instant case, the trial court found that Rule 42(b)(1)(A) had been satisfied.[3]

■ The trial court is charged with the initial task of identifying the substantive law issues and determining whether the character and nature of the class satisfies the requirements of the class action procedure. *Clements v. League of United Latin Am. Citizens (LULAC)*, 800 S.W.2d 948, 951 (Tex. App.—Corpus Christi 1990, no writ); *National Gypsum Co. v. Kirbyville Indep. Sch. Dist.*, 770 S.W.2d 621, 627 (Tex.App.—Beau-

mont 1989, writ dism'd w.o.j.). The trial court is not required to weigh the substantive merits of each class member's claim. *Clements*, 800 S.W.2d at 951.

■ A proponent of a class is not required to make an extensive evidentiary showing in support of the motion for certification. *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Vinson*, 880 S.W.2d at 823. It is not necessary for plaintiffs to prove a *prima facie* case of liability to be entitled to class certification. *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 607 (Tex.App.—Texarkana 1995, writ dism'd). In determining whether a class action is appropriate, the trial court is not limited to evidence that would be admissible at trial, but may consider the pleadings and "other material" in the record. *Id.; Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Vinson*, 880 S.W.2d at 823; *Dresser Indus., Inc.*, 847 S.W.2d at 376; *Clements*, 800 S.W.2d at 952; *National Gypsum*, 770 S.W.2d at 627; *Life Ins. Co. of the S.W. v. Brister*, 722 S.W.2d 764, 772–73 (Tex. App.—Fort Worth 1986, no writ) (maintainability of a class action may be determined on basis of pleadings, though certification determination should be predicated on more information than petition itself).

■ So long as certification is sought and decided at an early phase of the litigation, before supporting facts have been fully developed, trial courts should favor certifying a class action. *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Microsoft Corp.*, 914 S.W.2d at 607; *Dresser Indus., Inc.*, 847 S.W.2d at 376; *Clements*, 800 S.W.2d at 952; *Life Ins. Co. of the S.W.*, 722 S.W.2d at 774–75. This is due in part to the fact that the certification order is always subject to later modification if circumstances require it. *Microsoft Corp.*, 914 S.W.2d at 607. Under rule 42(c)(1), the trial court may alter, amend, or withdraw class certification at any time before final judgment, or order the naming of

---

**3.** Rule 42(b)(1)(A) provides as follows:
(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.
TEX.R. CIV. P. 42(b)(1)(A).

additional parties to insure adequate representation. Tex.R. Civ. P. 42(c)(1); *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Microsoft Corp.*, 914 S.W.2d at 607; *Dresser Indus., Inc.*, 847 S.W.2d at 371; *Clements*, 800 S.W.2d at 951–52; *see Life Ins. Co. of the S.W.*, 722 S.W.2d at 774–75; *Salvaggio v. Houston Indep. Sch. Dist.*, 709 S.W.2d 306, 309–10 (Tex.App.—Houston [14th Dist.] 1986, writ dism'd);

### Commonality

■ FirstCollect's first issue questions whether there are controlling issues common to the class members. Armstrong responds that the agreement she signed at the Medical Center violates article 5069–11.04 of the revised civil statutes.

■ The commonality requirement is satisfied if the class representative shows that there exists a legal or factual question common to the class. Tex.R. Civ. P. 42(a). "Questions common to the class" means questions that, when answered as to one class member, are answered as to all class members. *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 648 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.); *RSR Corp. v. Hayes*, 673 S.W.2d 928, 930 (Tex. App.—Dallas 1984, writ dism'd w.o.j.). The rule does not require that all or even a substantial portion of the legal and factual questions be common to the class. *Microsoft Corp.*, 914 S.W.2d at 611; *Wente v. Georgia–Pac. Corp.*, 712 S.W.2d 253, 255 (Tex.App.—Austin 1986, no writ). "A single common question could provide adequate grounds for a class action." *Microsoft Corp.*, 914 S.W.2d at 611; *see also Wente*, 712 S.W.2d at 255. It is also significant that the common issue may be one of law or fact; there need not be common issues of law and fact. *Wente*, 712 S.W.2d at 255; *see also Dresser Indus., Inc.*, 847 S.W.2d at 372 (common issue of law or fact).

■ Class certification will not be prevented merely because damages must be determined separately for each member of the class. *Angeles/Quinoco Sec. Corp. v. Collison*, 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Adams v. Reagan*, 791 S.W.2d 284, 289 (Tex.App.—

Fort Worth 1990, no writ). Nor will the presence of even an arguable defense peculiar to different members destroy the entire class. *Angeles/Quinoco*, 841 S.W.2d at 516; *Adams*, 791 S.W.2d at 289.

Article 5069–11.04 provides, in relevant part, as follows:

No debt collector may collect or attempt to collect any debt by unfair or unconscionable means employing the following practices:

(b) collecting or attempting to collect any interest or other charge, fee, or expense incidental to the obligation unless such interest, or incidental fee, charge, or expenses is *expressly authorized* by the agreement creating the obligation or legally chargeable to the consumer.

Tex.Rev.Civ. Stat. Ann. art. 5069–11.04(b) (emphasis added). Armstrong complains that the 32% collection fee charged by FirstCollect was not "expressly authorized" by the agreement she signed. She contends the agreement authorizes only an attorney to charge a collection fee of 32% of the debt. Thus, the overriding question that must be answered in this case is whether the agreement "expressly authorized" the fee collected by FirstCollect. Because every patient treated at a Coastal staffed hospital is required to sign the same agreement, this question would be common to any similar claims brought by other patients from whom FirstCollect collected outstanding debts and collection fees. That damages for each patient may have to be determined separately or that FirstCollect may have defenses relative only to certain patients will not defeat a finding of commonality.

We conclude the trial court did not abuse its discretion in finding that there are questions of law or fact common to the class. Accordingly, we overrule FirstCollect's first issue.

### Numerosity

■ In its second issue, FirstCollect contends the trial court could only speculate about the number of potential claimants with the same common question.

■ In order to certify a class, the trial court must find "the class is so numerous that joinder of all members is impracticable." TEX.R. CIV. P. 42(a)(1). This determination is not based on numbers alone. *Weatherly,* 905 S.W.2d at 653; *National Gypsum,* 770 S.W.2d at 624. The test is whether joinder of all members is impracticable in view of the size of the class and such factors as judicial economy, the nature of the action, geographical locations of class members, and the likelihood that class members would be unable to prosecute individual lawsuits. *Weatherly,* 905 S.W.2d at 653; *National Gypsum,* 770 S.W.2d at 624. There is no mechanical rule for determining when class size reaches that threshold. *Employers Cas. Co. v. Texas Ass'n of Sch. Bd. Workers' Comp. Self–Ins. Fund,* 886 S.W.2d 470, 474 (Tex.App.—Austin 1994, writ dism'd w.o.j.). Impracticable does not mean impossible. *Chevron U.S.A., Inc. v. Kennedy,* 808 S.W.2d 159, 161 (Tex.App.—El Paso 1991, writ dism'd w.o.j.). The representatives need only to show that it is extremely difficult or inconvenient to join all the members of the class. *Id.*

Answers to interrogatories show that between April 15, 1995 and January 20, 1998, approximately 8,650 people were charged with what FirstCollect describes as "a fee pursuant to their agreement." In addition, the affidavit of Karen Wallenstedt, Senior Client Relations Representative of Healthcare, reflects that the language at issue in this case is required in every patient agreement signed at the Medical Center. The affidavit of Elizabeth Marinelli, a representative of FirstCollect, further provides that FirstCollect relies on the language when making collections for Coastal. Based on this evidence and the common question, the trial court could have found that judicial economy, the nature of the claim, and the potential geographical location of class members made joinder of all members impracticable.

We conclude the trial court did not abuse its discretion in finding that the class is so numerous that joinder of all members is impractical. FirstCollect's second issue is overruled.

## Typicality

■ The third issue raised by FirstCollect challenges the typicality requirement. Specifically, FirstCollect asserts Armstrong's claim may rest upon theories of recovery unavailable to other class members. FirstCollect points to Armstrong's claims of ambiguity and adhesion raised in her response to FirstCollect's motion for summary judgment.

■ In order to satisfy the typicality requirement, the class representative must possess the same interests as the class. *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). The requirement is satisfied when the class representative demonstrates that its claims are substantially similar in its essential characteristics as those of the class, *see Chevron,* 808 S.W.2d at 162, although they need not be identical or "perfectly coextensive." *Health & Tennis Corp. of Am.,* 928 S.W.2d at 588; *Microsoft Corp.,* 914 S.W.2d at 613; *Cedar Crest Funeral Home, Inc. v. Lashley,* 889 S.W.2d 325, 331 (Tex.App.—Dallas 1993, no writ); *Wiggins v. Enserch Exploration, Inc.,* 743 S.W.2d 332, 334–35 (Tex.App.—Dallas 1987, writ dism'd w.o.j.). The claims must arise from the same event or course of conduct and must be based on the same legal theory. *Microsoft Corp.,* 914 S.W.2d at 613.

After reviewing the record, we find that Armstrong did not raise ambiguity and adhesion in her original pleadings. Armstrong's sole complaint in her petition is that FirstCollect's collection expenses violated article 5069–11.04. Armstrong's interest, and that of the class members, is the recoupment of any collection expenses they paid in violation of article 5069–11.04. Their claims arise out of the same course of conduct and are based on the same legal theory.

We conclude the trial court did not abuse its discretion in finding that Armstrong's claims are typical of the claims of the class. We overrule FirstCollect's third issue.

## Adequate Representation

■ By its fourth issue, FirstCollect questions whether Armstrong is an adequate

class representative because her claims are potentially antagonistic to the claims of other class members. The adequacy of class counsel is not questioned.

A class representative must fairly and adequately represent the interest of the class. TEX.R. CIV. P. 42(a); *Weatherly*, 905 S.W.2d at 651; *Dresser Indus., Inc.*, 847 S.W.2d at 373. The adequacy of representation is a fact question to be determined by the trial court based on the circumstances of each case. *Microsoft Corp.*, 914 S.W.2d at 614; *Dresser Indus., Inc.*, 847 S.W.2d at 373. In determining whether a representative is adequate to protect the interests of the class, the trial court must consider the zeal and competence of class counsel and "the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 844 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Adams*, 791 S.W.2d at 291.

The representative must demonstrate that, through its attorney, it will vigorously prosecute the class claims and assure the court that there is no antagonism between the representative and the class members. *Health & Tennis Corp. of Am.*, 928 S.W.2d at 589; *see also Weatherly*, 905 S.W.2d at 651; *Dresser Indus., Inc.*, 847 S.W.2d at 373; *Wiggins*, 743 S.W.2d at 334–35. Class counsel must be sufficiently qualified and experienced to prosecute the action vigorously. *Microsoft Corp.*, 914 S.W.2d at 614; *Employers Cas. Co.*, 886 S.W.2d at 474. The qualifications and experience of the class counsel is of greater consequence than the knowledge of the class representatives. *See Microsoft Corp.*, 914 S.W.2d at 614.

FirstCollect reargues the possibility that Armstrong might seek relief based on her individual defenses of ambiguity and adhesion. FirstCollect contends that if the collection fee violates the statute, then Armstrong's defenses, which may result in setting aside the agreement, conflict with other members who may only be entitled to the difference, or a set off, between what was collected and actual collection expenses. As we stated previously, however, the only basis

for relief raised by Armstrong's class action pleading is the violation of the "expressly authorized" language of article 5069–11.04. That damages may have to be computed individually or that affirmative defenses may be available against certain of the class members, will not defeat class certification.

We conclude the trial court did not abuse its discretion in finding that Armstrong will fairly and adequately protect the interests of the class. Accordingly, we overrule FirstCollect's fourth issue.

*Inconsistent Adjudications*

By its fifth issue, FirstCollect contends the requirements of rule 42(b)(1)(A) have not been satisfied. Relying predominantly on federal case law, FirstCollect argues that inconsistent adjudications are not caused when some plaintiffs win and others lose. FirstCollect also argues that there are no common issues which touch on its standard of conduct. In addition, FirstCollect contends the doctrine of collateral estoppel would obviate any inconsistency.

Under subsection (b) of rule 42 of the rules of civil procedure, a class may be certified if, in addition to meeting the four-prong requirements of 42(a), the court finds one circumstance enumerated in 42(b). The trial court found that 42(b)(1)(A) was satisfied. This rule provides:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

TEX.R. CIV. P. 42(b)(1)(A).

The federal counterpart to rule 42, FED. R.CIV.P. 23(b)(1)(A), is satisfied when judgments in separate suits would force the party opposing certification into the legal quagmire of violating one judgment while complying

with another. *Adams,* 791 S.W.2d at 292 (citing *McBirney v. Autrey,* 106 F.R.D. 240, 245 (N.D.Tex.1985)). Under federal case law, that the defendant may be liable to some plaintiffs but not to others does not create inconsistent adjudications. *Adams,* 791 S.W.2d at 292.

■ Although rule 42 is patterned after the federal class action rule and FirstCollect's reference to federal case law is appropriate, *see id.* at 288, federal decisions are merely persuasive in interpreting the Texas rule. *Morgan v. Deere Credit, Inc.,* 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994 no writ); *Ball v. Farm & Home Sav. Ass'n,* 747 S.W.2d 420, 422–23 (Tex. App.—Fort Worth1988, writ denied); *Smith v. Lewis,* 578 S.W.2d 169, 172 (Tex.Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). Because we are not bound by federal interpretation, we conclude the better approach is that taken by the Fort Worth Court of Appeals in *Adams.*

In *Adams,* a class of 1100 investors was certified in an action against officers and directors of an investment company. *Adams,* 791 S.W.2d at 287. One complaint raised by the company on appeal was that the trial court abused its discretion in certifying a class under rule 42(b)(1)(A). *Id.* The Fort Worth Court of Appeals concluded that a class action was the appropriate method of adjudication for the cause of action because of the large number of plaintiffs with closely similar core complaints. *Id.* at 292. Citing federal case law, the court found repeated litigation of the common issues in individual actions would be "grossly inefficient, exorbitantly costly and a waste of precious judicial resources." *Id.* (citing *Smith v. MCI Telecommunications, Corp.,* 124 F.R.D. 665, 679 (D.Kan.1989) and *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 642 (D.Colo.1986)). That individual suits may be conducted before different juries and judges and perhaps in different counties, and that absolute uniformity of results is not likely, even with the same testimony, facts, and issues of law, is sufficient to satisfy the requisites of the rule. *Id.* at 293; *see Reserve Life Ins.,* 917 S.W.2d at 845.

In the matter before us, every patient treated at a hospital staffed by Coastal physicians had to sign an agreement containing the questioned clause. More than 8,000 people were charged a fee between April 1995 and January 1998 as a result of a signed agreement. This number does not include the other potential class members who paid a fee between April 1993 and April 1995. Without class certification, there is a possibility of individual suits before different judges and juries with varying outcomes despite the fact that the legal issues and facts tend to be similar. Based on the possibility of varying interpretations of the agreement's compliance with article 5069–11.04, FirstCollect could be acting within the law in some jurisdictions but not in others. We, therefore, conclude the trial court did not abuse its discretion in finding that inconsistent adjudications would impose different standards of conduct for FirstCollect.

■ As to collateral estoppel, the doctrine provides that once an essential issue has been litigated and determined, the issue is conclusive in a subsequent action between the parties. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984); *Morgan,* 889 S.W.2d at 367. If FirstCollect should win an individual action brought by Armstrong, subsequent plaintiffs would not be estopped from relitigating similar issues because they were not parties to the original action. *See El Paso Natural Gas Co. v. Berryman,* 858 S.W.2d 362, 364 (Tex.1993). Even if collateral estoppel applied, trial courts in this state have discretion to refuse to apply it in the interest of fairness. *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 7 (Tex.1986); *Finger v. Southern Refrigeration Serv., Inc.,* 881 S.W.2d 890, 896 (Tex.App.— Houston [1st Dist.] 1994, writ denied). Nevertheless, we are unable to determine from the record that this issue was ever raised before the trial court.

We conclude the trial court did not abuse its discretion in refusing to view collateral estoppel as a valid reason for barring class certification. We overrule FirstCollect's fifth issue.

We affirm the trial court's class certification order.