Nissan Motors v. Fry, et al.








NUMBER 13-99-199-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI


____________________________________________________________________



NISSAN MOTOR COMPANY, LTD. D/B/A

NISSAN MOTOR CORPORATION IN USA, Appellant,



v.




BECKY FRY, LOIS BURKE, AND ALBERTANO

AGUILERA, ON BEHALF OF THEMSELVES AND

OTHERS SIMILARLY SITUATED, Appellees.

____________________________________________________________________



On appeal from the 138th District Court of Cameron County, Texas.

____________________________________________________________________



O P I N I O N



Before Justices Dorsey, Hinojosa, and Chavez

Opinion by Justice Hinojosa




 Appellant, Nissan Motor Company, Ltd. d/b/a Nissan Motor Corporation in USA, filed this interlocutory appeal after the
trial court signed a class certification order. Nissan contends the trial court erred in certifying the class. We affirm.

A. Background


 Appellees sued Nissan for economic damages (1) arising out of alleged defects in certain two-point motorized safety belt
systems installed in Nissan vehicles, and requested class certification. Appellees allege the seat belt system is unfit for the
ordinary purpose for which it is intended, is defective and inadequate, and violates the implied warranty of merchantability. 
Specifically, they allege the system is unreasonably dangerous and defective because it lacks adequate warnings that the
separate manual lap belt must be used to avoid injury in an accident. Appellees claim that unless the lap belt is properly
engaged, the system (1) will not perform its intended function of protecting passengers from injury in a collision and (2)
can itself cause serious injury to the passenger it is supposed to protect. Appellees further claim that the snugness of the
automatic shoulder portion of the seat belt system creates an express warranty that the user is safely restrained without
manually engaging the lap belt portion, leading to a sense of false security, and that the accompanying warnings and
instructions are inadequate to overcome this problem.

 Appellees pleaded various causes of action against Nissan, including: 

 (1) breach of the implied warranty of merchantability; and

 (2) violations of the Texas Deceptive Trade Practices -- Consumer Protection Act ("DTPA"), and Tex. Bus. & Comm.
Code Ann. §§17.01, 17.46, 17.50 (Vernon 1987):



(a) breach of express warranties pursuant to section 17.50(a) of the DTPA; (2)



(b) breach of implied warranties pursuant to section 17.50(a) of the DTPA;



(c) by using false, misleading and deceptive acts or practices as defined in Sections 17.50 and 17.46 of the DTPA in the
following ways:



 (i) in causing confusion of or misunderstanding as to the source, sponsorship, approval or certification of goods or services
in violation of section 17.46(b)(2) of the DTPA;



 (ii) in representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or
qualities which they do not have, in violation of section 17.46(b)(5) of the DTPA;



 (iii) in representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular
style or model, if they are of another, in violation of section 17.46(b)(12) of the DTPA; and 



 (iv) in representing that a guarantee or warranty can involve rights, or remedies, which it does not have or involve, in
violation of section 17.46(b)(19) of the DTPA.



 Appellees seek monetary compensation for all actual, special, and consequential damages and pecuniary losses including,
but not limited to, the cost to repair each vehicle and/or replace the defective part, the cost of alternative transportation
during the time necessary to repair each vehicle, and the value of the loss of use of each vehicle during the time necessary
to repair each vehicle.

 The trial court found that appellees' claims are based on an alleged common course of conduct of manufacturing and
selling a defective product, which was allegedly marketed through a common course of similar misrepresentation, and
ordered certification of a class consisting of "all residents in the State of Texas who own a Nissan vehicle equipped with a
two-point passive restraint system equipped with a separate manual lap belt." The evidence showed this system was
installed in various Nissan vehicles manufactured from 1987 through 1995, and that there are some 153,886 of these
vehicles currently registered in Texas. 

B. Jurisdiction


 A party may complain of all matters pertaining to a class action certification by interlocutory appeal. Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(3) (Vernon Supp. 2000); Central Power & Light Co. v. City of San Juan, 962 S.W.2d 602,
607 (Tex. App.--Corpus Christi 1998, pet. dism'd w.o.j.). 



C. Standard of Review


 It is well established that a trial court has broad discretion in determining whether to grant or deny class certification. 
Entex v. City of Pearland, 990 S.W.2d 904, 909 (Tex. App.--Houston [14th Dist.] 1999, no pet.); Union Pac. Resources
Co. v. Chilek, 966 S.W.2d 117, 120 (Tex. App.--Austin 1998, pet. dism'd w.o.j.). A class certification order will be
reversed only if the record shows a clear abuse of discretion. General Motors v. Bloyed, 916 S.W.2d 949, 955 (Tex. 1996);
FirstCollect, Inc. v. Armstrong, 976 S.W.2d 294, 298 (Tex. App.--Corpus Christi 1998, pet. dism'd w.o.j.); Chilek, 966
S.W.2d at 120; Central Power & Light, 962 S.W.2d at 607. A trial court abuses its discretion if it acts arbitrarily,
unreasonably or without reference to any guiding principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242
(Tex. 1985); Entex, 990 S.W.2d at 909; FirstCollect, 976 S.W.2d at 298. 

 A trial court also abuses its discretion when it fails to properly apply the law to undisputed facts, or when its ruling is
based on factual assertions not supported by material in the record. Texas Commerce Bank Nat'l Ass'n v. Wood, 994
S.W.2d 796, 801 (Tex. App.--Corpus Christi 1999, pet. dism'd); Hi Lo Auto Supply, L.P. v. Beresky, 986 S.W.2d 382, 386
(Tex. App.--Beaumont 1999, writ mand. filed). On appeal, the reviewing court must view the evidence in the light most
favorable to the trial court's ruling and indulge every presumption in favor of that ruling. Wood, 994 S.W.2d at 801; Entex,
990 S.W.2d at 908; FirstCollect, 976 S.W.2d at 299. In applying this standard, the reviewing court must defer to the trial
court's factual determinations, so long as they are properly supported by the record, while reviewing its legal determinations
de novo. Entex, 990 S.W.2d at 909; Remington Arms Co., Inc. v. Luna, 966 S.W.2d 641, 643 (Tex. App.--San Antonio
1998, pet. denied). 

D. General Requirements for Class Certification


 Class action suits furnish an efficient means for numerous claimants with a common complaint to obtain a remedy where it
is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for
damages. Bloyed, 916 S.W.2d at 952-53 (citing Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980)). Class
actions also facilitate the spreading of litigation costs among numerous litigants with similar claims. Bloyed, 916 S.W.2d at
952-53 (citing U. S. Parole Comm'n v. Geraghty, 445 U.S. 388, 403(1980)). A member of a class may sue or be sued as a
representative party of the class only if all of the following requirements of rule 42(a) are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;



(2) there are questions of law or fact common to the class;



(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and



(4) the representative parties will fairly and adequately protect the interests of the class. 



Tex. R. Civ. P. 42(a). Additionally, at least one of the enumerated requirements set forth in rule 42(b) must be met. In this
case, appellees pleaded rule 42(b)(4), which provides as follows:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are
satisfied, and in addition:



* * * * *


(4) the court finds that questions of law or fact common to the members of the class predominate over any questions
affecting only individual members, and that a class action is superior to other available methods for the fair and efficient
adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in
individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation
concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of
concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the
management of a class action.



Tex. R. Civ. P. 42(b)(4).



 The trial court is charged with the initial task of identifying the substantive law issues and determining whether the
character and nature of the class satisfies the requirements of class action. FirstCollect, 976 S.W.2d at 299; Central Power
& Light, 962 S.W.2d at 627; Rio Grande Valley Gas Co. v. City of Pharr, 962 S.W.2d 631, 640 (Tex. App.--Corpus Christi
1997, pet. dism'd). The plaintiffs' right to proceed as a class may be established by materials which need not meet all the
requirements of admissibility at trial. Wood, 994 S.W.2d at 801; Health & Tennis Corp. of Am. v. Jackson, 928 S.W.2d
583, 587 (Tex. App.--San Antonio 1996, writ dism'd w.o.j.);Vinson v. Texas Commerce Nat'l Bank, 880 S.W.2d 820 (Tex.
App.--Dallas 1994, no writ); Dresser Indus., Inc. v. Snell, 847 S.W.2d 367, 376 (Tex. App.--El Paso 1993, no writ).





E. Commonality


 By its first issue, Nissan contends the trial court abused its discretion by identifying breach of warranty, defectiveness and
DTPA representations as common questions when:

(a) appellees have failed to plead a viable breach of warranty claim;



(b) the class includes used vehicle purchasers who cannot assert implied warranty claims;



(c) class members received varying warnings and instructions regarding seat belt usage, and these varying warnings and
instructions are the basis of the class claims;



(d) the record contains no evidence that any class member received any relevant express warranty; and



(e) the record contains no evidence that any class member received any relevant untrue representation.



 Rule 42(a)(2) does not require that all or even a substantial portion of the legal and factual questions be common to the
class. Rainbow Group, Ltd. v. Johnson, 990 S.W.2d 351, 358 (Tex. App.--Austin 1999, pet. dism'd. w.o.j.); FirstCollect,
976 S.W.2d at 372. It requires only that some legal or factual questions be common to the class. Rainbow Group, 990
S.W.2d at 358; Reserve Life Ins. Co. v. Kirkland, 917 S.W.2d 836, 842 (Tex. App.--Houston [14th Dist.] 1996, no writ).
The commonality requirement means that an issue of law or fact exists that inheres in the complaints of all the class
members. Entex, 990 S.W.2d at 919; Microsoft, 914 S.W.2d 602 611 (Tex. App.--Texarkana 1995, , writ dism'd w.o.j.). 
Questions common to the class are those which, when answered as to one class member, are answered as to all class
members. Entex, 990 S.W.2d at 919; Chilek, 966 S.W.2d at 122; Weatherly v. Deloitte & Touche, 905 S.W.2d 642, 648
(Tex. App.--Houston [14th Dist.] 1995, writ dism'd w.o.j.), mand. denied, 951 S.W.2d 394 (Tex. 1997)). The common
issue may be one of law or fact; there need not be common issues of law and fact. FirstCollect, 976 S.W.2d at 300; Wente
v. Georgia-Pac. Co., 712 S.W.2d 253, 255 (Tex. App.--Austin 1986, no writ). A single common question could provide
grounds for class action. FirstCollect, 976 S.W.2d at 300; Rio Grande Valley Gas, 962 S.W.2d at 641; Microsoft, 914
S.W.2d at 611. The commonality requirement is generally considered satisfied where (1) many members of the class are
subject to the same misrepresentation or omissions by reason of common documents, or (2) the defendant is alleged to have
engaged in a common course of conduct. Rio Grande Valley Gas, 962 S.W.2d at 643; Weatherly, 905 S.W.2d at 651
(citing Adams v. Reagan, 791 S.W.2d 284, 289 (Tex. App.--Fort Worth 1990, no writ)).

 In issue 1(a), Nissan contends the trial court erred in finding commonality because appellees failed to plead a viable breach
of warranty claim, and cites General Motors Corp. v. Brewer, 966 S.W.2d 56 (Tex. 1998), in support of its contention.
Brewer was also a class action suit arising out of an allegedly defective seat belt system. However, the Brewer plaintiffs
did not allege that the seat belt failed to restrain, but that the poor design of the system, requiring disengagement of the
seatbelt in order to enter or exit the vehicles, rendered the system non-passive.

 The supreme court's decision in Brewer was a narrow one, holding that the plaintiffs had not raised a fact issue under
section 2.314(b)(3) of the Texas Business & Commerce Code, which provides that a seller impliedly warrants goods to be
fit for the ordinary purpose for which such goods are used. In Brewer, the supreme court stated:

For goods to breach this warranty, they must be unfit for the ordinary purposes for which they are used because of a lack of
something necessary for adequacy . . . . Here, the product merely fails to fulfill the precise expectations of the consumer
because the product is more cumbersome to use than anticipated. A product which performs its ordinary function
adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer
would like.



Id. at 57. This is not dispositive of the issue of defectiveness in the instant case. Appellees allege more than mere
cumbersomeness. They claim the seat belt system and its accompanying warnings are defective because they do not
perform the ordinary function of a seat belt system -- to provide adequate protection in a traffic accident -- and they seek
monetary damages to place adequate warnings in the vehicles and for incidental and consequential damages. 

 Furthermore, a common question is defined as one which when answered as to one class member is answered as to all
class members. See Reserve Life, 917 S.W.2d at 842. Here, a jury finding of "defect" or "no defect" will affect the claim of
each and every class member. We conclude the trial court did not abuse its discretion in finding commonality. We
overrule Nissan's issue 1(a).

 In issue 1(b), Nissan contends the trial court erred in finding commonality because the implied warranty of merchantability
attaches only to the sale of new merchandise, and some members of the class purchased used Nissan vehicles. While the
class members who purchased used vehicles may have no claim for breach of the implied warranty of merchantability
(appellees concede this to be so), Texas law dictates that as long as class certification is sought and decided at an early
phase of the litigation, before supporting facts have been fully developed, trial courts should favor certifying a class action. 
 FirstCollect, 976 S.W.2d at 299; Chilek, 966 S.W.2d at 123; Dresser Indus., 847 S.W.2d at 376. This is due in part to the
fact that the certification order is always subject to later modification if circumstances require it. FirstCollect, 976 S.W.2d
at 299; Rio Grande Valley Gas, 962 S.W.2d at 640;Weatherly, 905 S.W.2d at 647.

 Rule 42 allows the trial court to alter, amend or withdraw class certification at any time before final judgment, or order the
naming of additional parties or the division of the class into subclasses to insure adequate representation. Tex. R. Civ. P.
42(c)(1). The trial court may easily create subclasses for purchasers of new Nissan vehicles and purchasers of used Nissan
vehicles. We conclude the trial court did not abuse its discretion in finding commonality. We overrule issue 1(b).

 In issue 1(c), Nissan contends the trial court erred in finding commonality because class members were given different
warnings (in owner's manuals and on sun visors) depending on the model purchased.

 In the trial court, the plaintiff has the burden of establishing the right to proceed as a class, but is not required to make an
extensive evidentiary showing in support of its motion for certification. Wood, 994 S.W.2d at 801; Chilek, 966 S.W.2d at
120;Clements v. LULAC, 800 S.W.2d 948, 952 (Tex. App.--Corpus Christi 1990, no writ). The trial court is not required to
weigh the substantive merits of each class member's claim. FirstCollect, 976 S.W.2d at 299; Central Power & Light, 962
S.W.2d at 609;Rio Grande Valley Gas, 962 S.W.2d at 640. A class proponent does not have to prove a prima facie case of
liability to be entitled to class certification. Central Power & Light, 962 S.W.2d at 608; Microsoft, 914 S.W.2d at 607;
Weatherly, 905 S.W.2d at 647. Therefore, "no evidence" and "insufficient evidence" standards do not apply to the initial
certification order. Rio Grande Valley Gas, 962 S.W.2d at 640. However, a class proponent must do more than merely
allege that the requirements for certification have been met and must show "at least some facts" to support certification. 
Weatherly, 905 S.W.2d at 647; Life Ins. Co. of Southwest v. Brister, 772 S.W.2d 764, 773 (Tex. App.--Fort Worth 1986, no
writ).

 At the certification hearing in this case, appellees produced an affidavit from an expert witness that all the passive restraint
systems in question, as well as their accompanying warnings, were essentially identical. We find there are "at least some
facts" in evidence that the seat belt systems and their accompanying warnings are similar. We conclude the trial court did
not abuse its discretion in finding commonality. We overrule issue 1(c).

 In issue 1(d), Nissan contends the trial court erred in finding commonality because there is no evidence that class
members received any relevant express warranty upon which they relied. Appellees assert the snugness of the shoulder
portion of the passive restraint system against the chest of the driver and front seat passenger creates an express warranty
that the user is safely restrained without using the manual lap belt. 

 While this may be a novel application of express warranty law, the issue now before us is the commonality of this cause of
action. Again, a common question is defined as one which when answered as to one class member is answered as to all
class members. See Reserve Life, 917 S.W.2d at 842. A jury finding that Nissan "gave an express warranty" or "did not
give an express warranty" will affect the claim of each and every class member. We conclude the trial court did not abuse
its discretion in finding commonality as to a cause of action for breach of express warranty. We overrule issue 1(d).

 In issue 1(e), Nissan contends the trial court erred in finding commonality because there is no evidence that any class
members received any relevant untrue representations.

 As with the issues of defectiveness and breach of express warranty, the class will have to prove it received untrue
representations about the seat belt system. This, too, is a common question. If the class fails to convince a jury, this issue
will affect the claims of each and every class member. See Reserve Life, 917 S.W.2d at 842 (a common question is defined
as one which when answered as to one class member is answered as to all class members). We conclude the trial court did
not abuse its discretion in finding commonality. We overrule issue 1(e).

 Because we have concluded the trial court did not abuse its discretion in finding commonality, we overrule Nissan's first
issue.

F. Predominance of Common Issues Over Individual Issues


 By its second issue, Nissan contends the trial court erred in finding that common issues will predominate over individual
issues at trial when:

 (a) reliance, causation, damages and other issues must be litigated for each class member;



 (b) class counsel submitted no trial plan and did not otherwise indicate a method for resolving the individual issues; and



 (c) the record contained no information from which the court could conclude the individual issues would not be the focus
of litigation.



 The existence of a common question is not enough to suffice for class certification; the court has the duty to evaluate the
relationship between common and individual issues. Tex. R. Civ. P. 42(b)(4); Rainbow Group, 990 S.W.2d at 360; E. &
V. Slack v. Shell Oil Co., 969 S.W.2d 565, 569 (Tex. App.--Austin 1998, no pet.). The test for predominance is not whether
common issues outnumber the individual issues, but instead whether common or individual issues will be the object of
most of the efforts of the litigants and the court. Rainbow Group, 990 S.W.2d at 360; Hi Lo Auto Supply, 986 S.W.2d at
387; Entex, 990 S.W.2d at 919; Central Power & Light, 962 S.W.2d at 610. In cases where it appears common issues may
predominate over individual issues, the most efficient approach for the trial court is to certify the class and, if necessary
after the case has developed, to dissolve or modify the class if common questions do not predominate at trial. Rainbow
Group, 990 S.W.2d at 360;Brister, 772 S.W.2d at 722; Health & Tennis Corp., 928 S.W.2d at 590.

 In issue 2(a), Nissan contends the trial court erred in finding that common issues will predominate because reliance,
causation, damages and other issues must be litigated for each class member.

 In determining whether common issues predominate, the trial court need only identify substantive law issues that will
control the litigation. Central Power & Light, 962 S.W.2d at 610. Class certification will not be prevented merely because
damages must be determined separately for each member of the class, nor because of the presence of an arguable defense
peculiar to certain members. Cental Power & Light, 962 S.W.2d at 610; Angeles/Quinoco Sec. Corp. v. Collison, 841
S.W.2d 511, 516 (Tex. App.--Houston [14th Dist.] 1992, no writ). 

 The trial court found that the following common substantive law issues will control the case: (1) an alleged common
course of manufacturing a defective product; (2) an alleged common course of selling a defective product; and (3) an
alleged marketing scheme based on a course of similar misrepresentation. If the trial court finds in favor of the plaintiffs on
these predominant issues, the logistical problems of determining individual class members' damages, if any, can be eased
by creating subclasses. See Tex. R. Civ. P. 42(c)(1). We conclude the trial court did not err in finding that common issues
will predominate. We overrule issue 2(a).

 In issue 2(b), Nissan contends the trial court erred in finding that common issues predominate because class counsel
submitted no trial plan and did not otherwise indicate a method for resolving individual issues. 

 Nissan has cited no authority, and we have found none, requiring class counsel to submit a plan for dealing with
individually-determined issues at the initial certification hearing. We conclude the trial court did not err in finding that
common issues will predominate. We overrule issue 2(b).

 In issue 2(c), Nissan contends the trial court erred in finding that common issues will predominate because the record
contained no information from which the court could conclude that individual issues would not be the focus of litigation.

 At the certification hearing, class counsel argued that common issues would predominate over individual ones because: (1)
the seat belt systems in question operate in an essentially identical manner, giving rise to the same express warranty for
each class member; (2) the warnings given in the vehicles were essentially identical, according to the plaintiffs' expert,
giving rise to the same defect for each class member; and (3) the cost-of-repair damages would be virtually identical for
each class member. He also cited several cases, involving similar circumstances, in which a class had been certified. 
Nissan's counsel disputed each of these claims, and provided examples of several cases in which a class had not been
certified.

 The record reflects the facts on this issue were vigorously disputed. A trial court does not abuse its discretion when it
bases its decision on conflicting evidence. Weatherly, 905 S.W.2d at 648; Vinson v. Texas Commerce Bank--Houston, 880
S.W.2d 820, 823 (Tex. App.--Dallas 1994, no writ). We conclude the trial court did not err in finding that common issues
will predominate over individual ones. We overrule issue 2(c).

 Because we have concluded the trial court did not abuse its discretion in finding that common issues will predominate over
individual issues at trial, we overrule Nissan's second issue.

G. Typicality


 By its third issue, Nissan contends the trial court abused its discretion in finding that the claims of the purported class
members were typical of the class claims because the representatives:

 (a) were precluded by law from asserting breach of warranty claims;



 (b) did not receive or rely upon any relevant representation;



 (c) have factual situations that differ significantly from the class allegations; and



 (d) did not receive the same warnings and instructions as the entire class. 



 Generally, the typicality requirement mandates that the class representatives possess the same interests and suffer the same
injury as the class. East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Chilek, 966 S.W.2d at 121;
Dresser Indus., 847 S.W.2d at 373. The class representative must not have interests antagonistic to those of the rest of the
class. Hi Lo Auto Supply, 986 S.W.2d at 388; Central Power & Light, 962 S.W.2d at 609.

 In issue 3(a), Nissan contends the trial court abused its discretion in finding that the claims of the purported class members
were typical of the class claims because two of the class representatives purchased used Nissan vehicles, and these class
representatives cannot state a cause of action for breach of the implied warranty of merchantability because this warranty
attaches only to the sale of new merchandise. Appellees admit that two class representatives did purchase used Nissan
vehicles.

 The class representative need not suffer precisely the same injury as the other class members, but there must be a nexus
between the injury suffered by the representative and the injuries suffered by the other class members. Rainbow Group,
990 S.W.2d at 358; Hi Lo Auto Supply, 986 S.W.2d at 387; Chilek, 966 S.W.2d at 121. To be typical, the representative's
claims must arise from the same event or course of conduct giving rise to the claims of other class members and must also
be based on the same legal theories. Hi Lo Auto Supply, 986 S.W.2d at 387;FirstCollect, 976 S.W.2d at 301. Claims need
not be identical or perfectly coextensive, just substantially similar. Cedar Crest Funeral Home, Inc. v. Lashley, 889
S.W.2d 325, 331 (Tex. App.--Dallas 1993, no writ). Only a conflict that goes to the very subject matter of the litigation
will defeat a party's claim of representative status.Dresser Indus., 847 S.W.2d at 373. 

 Here, the nexus required for typicality among the class representatives is the same alleged defect which was marketed in
substantially the same way for all class members, including the class representatives. Even if two representatives are not
entitled to recover damages under this theory, they have other theories under which they may recover damages. The trial
court may easily address the problem of differing recoveries by creating subclasses with respect to the different categories
of purchasers. See Tex. R. Civ. P. 42(c)(1); FirstCollect, 976 S.W.2d at 299; Rio Grande Valley Gas, 962 S.W.2d at 640;
Weatherly, 905 S.W.2d at 647.

 Nissan also contends that appellees have failed to plead a proper defect upon which to base their breach of warranty
claims; thus, there is no typicality. Again, Nissan cites Brewer, 966 S.W.2d at 56, in support of this contention. However,
we have already held in issue 1(a) that Brewer is not dispositive of the issue of defectiveness in this case.

 Here, the critical nexus among the class members is the alleged defectiveness of the seat belt system which was
manufactured and marketed through a common course of conduct by Nissan. We conclude the trial court did not abuse its
discretion in finding typicality. We overrule issue 3(a).

 In issue 3(b), Nissan contends the trial court abused its discretion in finding that the DTPA breach of express warranty
claims of the purported class members are typical of the class because the representatives did not rely on any express
warranty given by Nissan. Again, the class claims the snugness of the passive seat-belt system created a representation that
the wearer was safe without having to engage the manual lap belt. This claim is a critical nexus between the class
representatives and the other class members. We conclude the trial court did not abuse its discretion in finding typicality. 
We overrule issue 3(b).

 In issue 3(c) Nissan contends the trial court abused its discretion in finding that the claims of the purported class members
were typical of the class claims because the "factual situation" of each class representative differs significantly from the
class allegations.



A. Becky Fry Hernandez


 Class representative Becky Fry Hernandez purchased a used Nissan automobile. When she purchased the vehicle,
Hernandez did not receive an owner's manual and the motor on the seat belt system did not work. She always manually
engages the shoulder and lap belts in the vehicle and is concerned for the safety of her teenaged daughter, who will soon be
driving the car.

B. Albertano Aguilera 


 Class representative Albertano Aguilera never received an owner's manual, and he is subject to the false security
syndrome.

C. Lois Burke


 Class representative Lois Burke received an owner's manual, but she did not begin wearing the lap belt until a relative told
her it was important to do so. She is concerned for the safety of passengers who ride with her.

 We cannot say, as a matter of law, that the testimony of these three individuals precludes the typicality of the class
representatives. The nexus of their claim is that the Nissan safety belt system at issue here is defective and unreasonably
dangerous, not only to the owners of the vehicles, but to their passengers as well. This evidence may bolster the class
claims that the warnings given by Nissan concerning the seat belt system were inadequate to reach all users of Nissan
vehicles. We conclude the trial court did not abuse its discretion in finding typicality. We overrule issue 3(c).

 In issue 3(d), Nissan contends the trial court abused its discretion in finding that the claims of the purported class members
were typical of class claims because the 

representatives did not receive the same warnings and instructions (in owner's manuals and on sun visors) as the entire
class. 

 We have already held in issue 1(c) that there are "at least some facts" in evidence regarding the similarity of the warnings
and instructions accompanying the seat belt system. See Weatherly, 905 S.W.2d at 647; Brister, 772 S.W.2d at 773.
Therefore, we conclude the trial court did not abuse its discretion in finding typicality. We overrule issue 3(d).

 Because we have concluded the trial court did not abuse its discretion in finding typicality, we overrule Nissan's third
issue.

H. Superiority of Class Action


 In its fourth issue, Nissan contends the trial court erred in finding that a class action suit is the superior form of
adjudication for appellees' claims when:

 (a) the court cannot require the warnings and instructions alleged to be necessary, and the class has not requested this relief;



 (b) a federal agency is empowered to order a recall and cost-free remediation of the alleged problem on a nationwide basis;



 (c) the federal agency remedy would eliminate any economic damages; and



 (d) class representatives testified that an affirmative remedy approach would be superior to the class action approach.



 Class certification is appropriate where repeated litigation of the common issues in individual actions is grossly inefficient,
exorbitantly costly, and a waste of judicial resources. Rainbow Group, 990 S.W.2d at 360; FirstCollect, 976 S.W.2d at
303. Class action is superior to other methods of adjudication where any difficulties which might arise in the management
of the class are outweighed by benefits of classwide resolution of common issues. Central Power & Light, 962 S.W.2d at
611; Weatherly, 905 S.W.2d at 655; National Gypsum Co. v. Kirbyville Indep. Sch. Dist., 770 S.W.2d 621, 626 (Tex.
App.--Beaumont 1989, writ dism'd. w.o.j.). That individual suits may be conducted before different juries and judges and
perhaps in different counties, and that absolute uniformity of results is not likely even with the same testimony, facts and
issues of law, is sufficient to satisfy the requirement of class action superiority. FirstCollect, 976 at 303; Adams, 791
S.W.2d at 287. One factor in determining the superiority of the class action method is that the trial court has invested time
and effort in familiarizing itself with the issues in dispute during several hearings. Tex. R. Civ. P. 42; Central Power &
Light, 962 S.W.2d at 612.

 In issue 4(a), Nissan contends the trial court erred in finding that a class action suit is the superior form of adjudication for
appellees' claims because "the court cannot require the warnings and instructions allegedly necessary and class counsel has
not requested such relief."

 In this case, appellees are not asking the court for any injunctive relief. They are seeking monetary damages to remedy the
alleged defect, and incidental and consequential damages to pay for alternate transportation while the alleged defect is
being remedied.

 Nissan argues that the National Highway Traffic Safety Administration ("NHTSA") is a superior forum for appellees'
claims. NHTSA, however, may only order a safety recall of motor vehicles; it is not empowered to order monetary
damages. Because the members of a class may seek monetary damages, we conclude the trial court did not err in finding
that a class action suit is the superior form of adjudication for appellees' claims. We overrule issue 4(a).

 In issues 4(b) and 4 (c), Nissan contends the trial court erred in finding that a class action suit is the superior form of
adjudication for appellees' claims because (1) NHTSA is empowered to order a recall and cost-free remediation of the
alleged problem on a nationwide basis, and (2) the NHTSA remedy would eliminate any economic damages.

 Nissan argues that a better resolution would be a cost-free safety recall of the vehicles by NHTSA. However, this matter
has already been rejected by that agency. On September 17, 1997, the trial court ordered appellees to file a petition with the
administrator of NHTSA, and they did so. By letter dated December 11, 1997, NHTSA informed the parties that it could
not provide the relief (monetary damages) sought by the appellees.

 As we have previously stated, appellees are not seeking injunctive relief. They are seeking monetary damages to remedy
the alleged defect, and incidental and consequential damages to pay for alternate transportation while the alleged defect is
being remedied. All monetary damages would not necessarily be eliminated by a NHTSA-ordered recall, and NHTSA is
not empowered to grant monetary damages.

 Accordingly, we conclude the trial court did not err in finding that a class action suit is the superior form of adjudication
for appellees' claims. We overrule issues 4(b) and 4(c).

 In issue 4(d), Nissan contends the trial court erred in finding that a class action suit is the superior form of adjudication for
appellees' claims because class representatives testified that an administrative remedy approach would be superior to the
class action approach.

 That the class representatives may have thought a nationwide solution would be better is not dispositive of the issue of
superiority of the class action method. Class counsel argued at the certification hearing that denying class certification
would leave many class members without any meaningful remedy, given the impracticability of each member suing for his
individual small monetary claim against Nissan. SeeBloyed, 916 S.W.2d at 952 (class actions are efficient means for
numerous claimants with common complaint to obtain remedy where it is not economically feasible to obtain relief by
traditional method of multiplicity of small individual suits).

Also, if a substantial number of Nissan owners decided to file suit, the cases would use up many judicial resources. The
class action conserves these resources and, as the trial court noted, it has already become familiar with the issues in this
case.

 We conclude the trial court did not err in finding that a class action suit is the superior form of adjudication for appellees'
claims. We overrule issue 4(d).

 Because we have concluded the trial court did not err in finding that a class action suit is the superior form of adjudication
for appellees' claims, we overrule Nissan's fourth issue.





 We affirm the trial court's class certification order.



FEDERICO G. HINOJOSA

Justice



Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this

the 25th day of May, 2000.

1. The suit expressly excludes any claims for personal injury.

2. Section 17.50 provides, in relevant part, as follows:



(a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or
damages for mental anguish:

 (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

 (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

 (B) relied on by a consumer to the consumer's detriment;

 (2) breach of an express or implied warranty;



Tex. Bus. & Comm. Code Ann. §17.50(a)(1) & (2) (Vernon Supp. 2000).